# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREANNA CEUVAS,<br><br>                 Plaintiff,<br>v.<br><br>UNITED BRANDS COMPANY, INC., et al.,<br><br>                 Defendants. | Case No. 11cv991 BTM(RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; DENYING MOTION TO STRIKE** |

Defendant United Brands Company, Inc. ("United Brands" or "Defendant") has filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC") and a motion to strike portions of the FAC. For the reasons discussed below, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's motion to strike is **DENIED**.

## I. BACKGROUND

Plaintiff Breanna Cuevas ("Plaintiff") brings this action on behalf of herself and a purported class of similarly situated individuals. Plaintiff alleges that Defendant engaged in deceptive business practices in connection with the marketing of its flavored caffeinated alcoholic beverage called "JOOSE" (the "Product"). JOOSE contained between 9.9 to 12 percent alcohol by volume in addition to approximately 124.95 milligrams of caffeine. (FAC ¶¶ 22, 24.) An 8-ounce cup of coffee contains 100 to 200 milligrams of caffeine and a 12-

ounce Coke has 35 milligrams of caffeine. (FAC ¶ 24.)

JOOSE went on the market in late 2007. (FAC ¶ 23.) In November 2010, the FDA sent Defendant a warning letter stating: "FDA is aware that, based on the publicly available literature, a number of qualified experts have concerns about the safety of caffeinated alcoholic beverages. Moreover, the agency is not aware of data or other information to establish the safety of the relevant conditions of use for your product." (FAC ¶ 25; Ex. C to FAC.) The FDA stated that as used in Defendant's product, caffeine was an unsafe food additive, rendering the product adulterated under section 402(a)(2)(C) of the Federal Food, Drug, and Cosmetic Act. (Ex. C to FAC.) The FDA voiced concerns regarding the safety of caffeine when used in the presence of alcohol because studies indicated that caffeine reduces subjects' subjective perception of intoxication but does not improve diminished motor coordination or slower visual reaction times. (Id.) The FDA gave Defendant 15 days from receipt of the letter to respond in writing. (Id.)

On November 24, 2010, the FDA reported that it had been informed by Defendant that Defendant had ceased shipping JOOSE and expected to have the product off retails store shelves by December 13, 2010. (FAC ¶ 31.)

In April 2010, Plaintiff purchased a can of "Dragon JOOSE" for $5.00 from a 7-Eleven in Corona, California. (FAC ¶ 36.) Plaintiff subsequently consumed the beverage. (Id.) In August 2010, Plaintiff purchased two cans of "JOOSE Watermelon" for $8.00 from a 7-Eleven located in Ontario, California. (Id.) Plaintiff consumed those beverages as well. (Id.) Plaintiff alleges that she saw Product advertising and looked at the Product's labeling prior to purchasing the beverages. (Id.)

According to Plaintiff, "Nothing in UBC's packaging, labeling, advertising, marketing, promotion, or sale of the Products disclosed, or adequately disclosed, the amount of caffeine in the Products or the risks associated with caffeine as used in the Products . . . ." (FAC ¶ 36.) Plaintiff claims that the amount of caffeine in the Products and the risks associated with caffeine as used in the Products were material facts that would have affected her decisions to purchase the Products. (FAC ¶ 37.) Plaintiff alleges that she was deceived by Defendant

into purchasing the Products. (Id.)   Plaintiff claims that she suffered an economic injury because the Products had significantly less value than was reflected in the price Plaintiff paid for them. (FAC ¶ 38.) "In fact, had Plaintiff known the true facts about the Products as set forth above, she would not have purchased them at all." (FAC ¶ 39.)

The proposed class consists of all persons who during the Class Period purchased the Products for personal use and not for purposes of further retail sale or distribution. (FAC ¶ 40.)

The FAC asserts the following claims: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"); (2) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§1750, et seq. ("CLRA"); (3) breach of express and implied warranties; and (4) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, et seq.

## II. DISCUSSION

### A. Motion to Dismiss

Defendant moves to dismiss the FAC for failure to state a claim. The Court grants the motion to dismiss as to Plaintiff's breach of express warranty claim but otherwise denies the motion.

#### 1. Federal Preemption

Defendant argues that federal law governing the labeling of alcohol preempts all of Plaintiff's claims. The Court disagrees.

27 U.S.C. § 215[1] provides that containers of alcoholic beverages must bear the following statement:

---

[1] This section was enacted as part of the Alcoholic Beverage Labeling Act of 1988, Pub. L. 100-690, Title VIII, § 8001(a)(3), 102 Stat. 4519 ("ABLA"). Although Defendant refers to preemption by the Federal Alcohol Administration Act ("FAAA"), Defendant is actually arguing preemption by the ABLA. The "FAAA" refers to Title 27, Chapter 8, Subchapter I (27 U.S.C. §§ 201-211). See 27 U.S.C. § 201 ("This subchapter may be cited as the "Federal Alcohol Administration Act.").

> "GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems."

27 U.S.C. § 216 provides:

> No statement *relating to alcoholic beverages and health*, other than the statement required by section 215 of this title, shall be required under State law to be placed on any container of an alcoholic beverage, or on any box, carton, or other package, irrespective of the material from which made, that contains such a container.

(Emphasis added.)

Defendant contends that Plaintiff's claims are expressly preempted by § 216 because Plaintiff's claims seek to impose requirements of warnings regarding the potential risks of an alcoholic beverage beyond those prescribed by the ABLA. It appears that Defendant interprets the language "statement relating to alcoholic beverages and health" as encompassing any statement regarding an alcoholic beverage that pertains to health. The Court reads § 216 more narrowly.

Because advertising and consumer protection are traditionally regulated by the states, there is a presumption against preemption, and if the text of the preemption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors preemption. Altria Group, Inc. v. Good, 555 U.S. 70, 77 (2008). Keeping this presumption in mind and taking into account explicit congressional intent, the Court interprets "statement relating to alcoholic beverages and health," as a statement regarding *health risks associated with consuming or abusing alcohol* – e.g., statements regarding the risk of intoxication, loss of motor ability, deterioration of judgment, or heightened risk of certain forms of cancer or other disease.

Congress enacted the ABLA to establish a comprehensive Federal program so that:

> (1) the public may be adequately reminded about any health hazards that may be associated with the consumption or abuse of alcoholic beverages through a nationally uniform, nonconfusing warning notice on each container of such beverages; and
>
> (2) commerce and the national economy may be--
>
>    (A) protected to the maximum extent consistent with this

> declared policy,
>
> (B) not impeded by diverse, nonuniform, and confusing requirements for warnings or other information on alcoholic beverage containers with respect to any relationship between the consumption or abuse of alcoholic beverages and health, and
>
> (C) protected from the adverse effects that would result from a noncomprehensive program covering alcoholic beverage containers sold in interstate commerce, but not alcoholic beverage containers manufactured and sold within a single State.

27 U.S.C. § 213. Congress's intention was to prevent a patchwork of state requirements with respect to warnings about the health hazards of consuming alcohol.

In light of the purpose of the ABLA, it makes sense to read the phrase "statement relating to alcoholic beverages and health," as pertaining to statements that discuss health hazards that may result from the consumption of *alcohol*. There is no evidence that Congress intended to ban warnings regarding other *non-alcoholic ingredients* in an alcoholic beverage that may have adverse health effects in and of themselves or when combined with alcohol.

Here, the warnings Plaintiff claims Defendant should have given relate to the *interaction of caffeine and alcohol*, not the health risks of alcohol per se. The warning would be something to the effect that caffeine may desensitize the person drinking the alcoholic beverage to any effects of the alcohol. The warning would not even have to reiterate or discuss what adverse health effects alcoholic beverages have. In other words, Plaintiff's claims do not seek to impose requirements regarding statements relating to the health hazards of consuming or abusing alcohol and are not expressly preempted by § 216.

Defendant argues that even if Plaintiff's claims are not expressly preempted, they are impliedly preempted by the ABLA. The Court is not convinced by this argument. An express provision does not categorically preclude courts from applying principles of implied preemption. Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc., 423 F.3d 1056, 1072 (9th Cir. 2005). However, an express definition of the preemptive scope of a statute supports a reasonable inference that Congress did not intend to preempt other

matters. Freightliner Corp. v. Myrick, 514 U.S. 280, 288 (1995).

As discussed above, Congress's purpose in enacting the ABLA was to regulate warnings regarding the health hazards associated with consuming or abusing alcohol. There is no basis for concluding that Congress intended to occupy the entire field of warnings or disclosures on alcohol beverage labeling/packaging. Nor is there any validity to Defendant's argument that it would either be impossible for Defendant to comply with both the ABLA and state law requirements, or compliance with state law would pose an obstacle to the accomplishment of stated Congressional goals.[2] Under the Court's interpretation of § 216, Defendant could have included the warning required by § 215(a) in addition to language cautioning consumers that caffeine when combined with alcohol may desensitize individuals to the effects of alcohol. The warning regarding the interaction of caffeine and alcohol would not interfere with Congressional goals regarding clear and uniform warnings on packages and labels regarding the health risks associated with consuming or abusing alcohol.

To the extent Plaintiff's claims are based on marketing other than JOOSE's container/packaging, Plaintiff's claims clearly are not preempted.[3] Unlike the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1334, the ABLA does not address advertising or promotion. The ABLA regulates statements regarding health risks associated with consuming alcohol on "any container of an alcoholic beverage, or on any box, carton, or other package." 27 U.S.C. § 215. Statements made by Defendant on promotional materials other than JOOSE's container/packaging fall outside the scope of the ABLA.

---

[2] There are two types of implied preemption: (1) field preemption, where the scheme of federal regulation "is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it"; and (2) conflict preemption, "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992) (citations and internal quotation marks omitted).

[3] Plaintiff claims that she saw "Product advertising" before she purchased the Products. (FAC ¶ 36.) Plaintiff does not specify what the "Product advertising" was – e.g. a print ad in a magazine or a cardboard display in the store. Although Plaintiff should have alleged the facts regarding the Product advertising with more specificity, the Court will not dismiss Plaintiff's claims on this ground because Plaintiff's claims are also supported by the lack of warnings on the container.

### 2. CLRA

Defendant contends that Plaintiff's CLRA claim must be dismissed because Plaintiff failed to timely provide notice as required by the CLRA. California Civil Code § 1782 provides:

> (a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
>
>> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
>>
>> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.
>
> The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.
>
> (b) Except as provided in subdivision (c), no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice.
> . . .
>
> (d) An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages. The appropriate provisions of subdivision (b) or (c) shall be applicable if the complaint for injunctive relief is amended to request damages.

In January 2011, Plaintiff filed her original Complaint, which contained a CLRA claim. In connection with the CLRA claim, Plaintiff sought equitable relief in the form of restitution and disgorgement of ill-gotten gains. On August 16, 2011, Plaintiff filed her FAC. The FAC also contains a CLRA claim, which seeks restitution as well as statutory damages, actual damages, and interest. The FAC alleges that on or about May 17, 2011, Plaintiff notified Defendant by certified mail of its violations of the CLRA and demanded that Defendant take corrective action.

Defendant argues that because Plaintiff did not provide notice 30 days prior to filing her original complaint, her CLRA claim must be dismissed. The Court agrees that Plaintiff

should have given notice prior to filing her original CLRA claim because her claim for the equitable relief of disgorgement or restitution was still a claim for damages. However, because Plaintiff gave Defendant notice more than 30 days prior to filing her FAC, Plaintiff has sufficiently complied with the CLRA's notice requirement.

In <u>Morgan v. AT&T Wireless Services, Inc.</u>, 177 Cal. App. 4th 1235, 1261 (2009), the California Court of Appeal explained that if a plaintiff files a CLRA claim for damages without the requisite notice, the claim should be dismissed without prejudice until 30 days or more after the plaintiff complies with the notice requirements. In <u>Morgan</u>, although deficient notice was given by plaintiffs before filing their second amended complaint, which contained a CLRA claim for damages, plaintiffs sent the required notice more than 30 days before they filed their third amended complaint. Therefore, the Court of Appeal reasoned, AT&T had the opportunity to correct the alleged wrong, and the trial court erred in sustaining a demurrer to the CLRA claim.   <u>See also</u>, <u>Doe v. AOL LLC</u>, 719 F. Supp. 2d 1102, 1110 (N.D. Cal. 2010) (citing <u>Morgan</u> with approval and dismissing without prejudice CLRA claim for failure to provide notice).

Defendant does not claim that it did not get proper notice more than 30 days prior to the filing of the operative complaint. Therefore, the purpose of the notice requirement was satisfied, and dismissal of the CLRA claim is not warranted.

### 3. Unfair Competition Law

#### a. Standing

Defendant contends that Plaintiff lacks standing under California's UCL because she has not alleged that she suffered an actual injury. As discussed below, the Court finds that Plaintiff has alleged economic injury sufficient to establish standing to bring a UCL claim.

In 2004, California voters approved Proposition 64, which restricted UCL standing to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition. Cal. Bus. & Prof. Code § 17204. Proposition 64 addressed the concern

of voters that the former law resulted in misuse by private attorneys who would "[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." Proposition 64, § 1, subd. (b)(3).

In the recent case of Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 323 (2011), the California Supreme Court explained that there are "innumerable ways in which economic injury from unfair competition may be shown." For example, a plaintiff may "surrender in a transaction more, or acquire in a transaction less, then he or otherwise would have." Id. In Kwikset, the plaintiffs claimed that they did not receive the benefit of their bargain – they paid for locksets labeled "Made in U.S.A.," mistakenly believing that the locksets were entirely manufactured in the United States. If the consumers had known that the locksets were mislabeled, they would not have purchased them. Id. at 327. The California Supreme Court reasoned that a consumer who is deceived by misrepresentations into making a purchase can satisfy the standing requirement of § 17204 "by alleging . . . that he or she would not have brought the product but for the misrepresentation. That assertion is sufficient to allege causation . . . . It is also sufficient to allege economic injury. " Id. at 330.

In Dingelman v. Advanced Medical Optics, Inc., 659 F.3d 835 (9th Cir. 2011), buyers of a contact lens cleaning solution sued the seller of the solution, alleging that the seller marketed the solution as an effective contact lens disinfectant and cleaner even though its users were seven times more likely than users of other contact lens solutions to suffer a serious eye infection called Acantamoeba Keratitis ("AK"). Although no member of the plaintiff class had contracted AK, they alleged that "[h]ad the product been labeled accurately, they would not have been willing to pay as much for it as they did, or would have refused to purchase the product altogether." Id. at 840. The Ninth Circuit held that the plaintiffs had shown that they had suffered injury in fact in the form of economic harm and therefore had standing under the UCL. Id.

In Dingelman, the Ninth Circuit distinguished Birdsong v. Apple, Inc., 590 F.3d 955 (9th Cir. 2009), the very case that Defendant relies on here. In Birdsong, the plaintiffs "did

not allege economic harm from having purchased headphones in reliance on false advertising, but rather claimed that the inherent risk of the headphones reduced the value of their purchase and deprived plaintiffs of the benefit of their bargain." Dingelman, 659 F.3d at 840 n. 1.  However, Apple had never represented that the headphones were safe at high volume and actually provided a warning against listening to music at loud volumes. Therefore, the Birdsong court concluded, the plaintiffs' alleged injury in fact was premised on the loss of a safety benefit that was not part of the bargain to begin with.  Birdsong, 590 F.3d at 961.

Like the plaintiffs in Dingelman and Kwikset, Plaintiff alleges that she would never have purchased the Products if she had known the truth about them – i.e. that caffeine in alcoholic beverages may desensitize individuals to the intoxicating effects of alcohol and that Defendant's Products contained approximately 124.95 milligrams of caffeine in each can. Accordingly, Plaintiff has established that she suffered economic injury and has standing to bring a UCL claim.

### b. Unlawful, Fraudulent, or Unfair Business Practices

Under the UCL, "unfair competition" is defined as including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200.  Plaintiff's allegations are sufficient to state an "unlawful," "fraudulent," and "unfair" business practice.

An "unlawful" business act under the UCL is any business practice that is prohibited by law, whether "civil or criminal, statutory or judicially made . . . , federal, state, or local." McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1474 (2006) (internal citations omitted).  Plaintiff has stated a claim that Defendant violated the CLRA.

The CLRA prohibits specified "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).  A fraudulent omission is actionable under the CLRA if the omission is contrary to a representation actually made by the

defendant or is an omission of a fact the defendant was obligated to disclose. Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 835 (2006). A duty to disclose exists when the defendant (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices and Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1172-73 (C.D. Cal. Nov. 30, 2010). The FAC suggests that Defendant had superior knowledge regarding the risks of consuming caffeine and alcohol simultaneously and therefore had a duty to disclose those material facts to unsuspecting consumers.[4]

A fraudulent business practice under the UCL is "one which is likely to deceive the public." McKell, 142 Cal. App. 4th at 1471. The alleged fraudulent omissions that support the CLRA claim also support a claim of fraudulent conduct under the UCL. Based on the allegations of the FAC, members of the public were likely to be deceived by Defendant's failure to disclose material facts regarding the risks associated with caffeine in alcoholic beverages such as Defendant's Products.[5]

Under California law, "unfair" business practices exist either when the harm to the consumer outweighs the utility of the practice to the defendant or when a business practice violates public policy as declared by "specific constitutional statutory or regulatory provisions." Rubio v. Capital One Bank, 613 F.3d 1195, 1205 (9th Cir. 2010) (quoting Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845, 854 (2002)). Plaintiff's fraudulent

---

[4] The Court need not determine whether Plaintiff has also stated unlawful practices based on violations of California's False Advertising Law, Bus & Prof. Code § 17500, et seq., or California's Sherman Food, Drug and Cosmetic Act, Health & Safety Code §§ 110620, et seq. Plaintiff has not asserted independent claims based on the alleged violation of these statutes.

[5] Fed. R. Civ. P. 9(b) applies to Plaintiff's fraud-based UCL and CLRA claims. As previously noted, Plaintiff's allegations regarding the "Product advertising" lack the requisite specificity. However, Plaintiff has alleged with sufficient specificity that prior to purchase, she looked at the Products' containers which did not include any warnings about the interaction of caffeine and alcohol. Images of the labeling of the specific Products consumed by Plaintiff are included in the FAC.

omission/CLRA claim satisfies the "unfair" prong as well.

    4. <u>Breach of Express and Implied Warranty</u>

Plaintiff contends that Defendant breached an express and implied warranty. Although Plaintiff has not stated a claim for breach of express warranty, Plaintiff has stated a claim for breach of an implied warranty.

To plead a cause of action for breach of express warranty, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused the plaintiff's injury. <u>Williams v. Beechnut Nutrition Corp.</u>, 185 Cal. App. 3d 135, 142 (1986). To create a warranty, representations regarding a product must be specific and unequivocal. <u>In re Toyota Motor Corp.</u>, 754 F. Supp. 2d at 1182. Plaintiff does not allege that Defendant made any express representations or warranties regarding the safety of consuming caffeine with alcohol. Therefore, Plaintiff's express warranty claim is dismissed for failure to state a claim.

A warranty that goods shall be merchantable "is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Comm. Code § 2314(1). Merchantable goods are "fit for the ordinary purposes for which such goods are used." Cal. Comm. Code § 2314(2)(c).

Defendant argues that Plaintiff cannot state a cause of action for breach of implied warranty because her claim is barred by Cal. Civ. Code § 1714.45, which provides:

> (a) In a product liability action, a manufacturer or seller shall not be liable if both of the following apply:
>
> > (1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community.
> >
> > (2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.
>
> . . .

///

///

> (c) For purposes of this section, the term "product liability action" means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.

According to Defendant, because alcohol is a listed common consumer product and is inherently unsafe, Plaintiff cannot maintain her breach of implied warranty claim. The Court disagrees.

Plaintiff's claims are not based on the inherent dangers of alcohol but on the undisclosed effects of caffeine and alcohol combined. In <u>Naegele v. R.J. Reynolds Tobacco Co.</u>, 28 Cal. 4th 856 (2002), the California Supreme Court held that § 1714.45 did not bar plaintiff's claim that tobacco manufacturers adulterated cigarettes that plaintiff smoked with additives that exposed him to dangers not inherent in cigarettes themselves.[6] The California Supreme Court explained that § 1714.45 derived from § 402A of the Restatement Second of Torts.[7] <u>Id.</u> at 863. Comment i to § 402A explains that for a product to be "unreasonably dangerous" the product must be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Comment i provides examples of inherently dangerous versus unreasonably dangerous products:

> Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably

---

[6] Originally, Cal. Civ. Code § 1714.45 provided immunity to tobacco manufacturers from claims for injuries caused by tobacco. In 1997, the California Legislature repealed the statute as it applied to manufacturers of tobacco products.

[7] Section 402A provides in relevant part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
    (a) the seller is engaged in the business of selling such a product, and
    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

>dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

Based on Comment i, the California Supreme Court concluded that § 1714.45 only applies to pure and unadulterated products. Naegele, 28 Cal. 4th at 864-65. "Accordingly, the statutory immunity does not shield a tobacco company from product liability for injuries or deaths to consumers of its products caused by something not inherent in the product itself - that is, if some adulteration of the product made it unreasonably dangerous." Id. at 864.

In this case, Plaintiff claims that Defendant's alcoholic beverage was adulterated with caffeine. Plaintiff alleges that the addition of caffeine made the alcoholic beverage unreasonably dangerous. Accordingly, § 1714.45 does not bar Plaintiff's implied warranty claim.

Plaintiff's Sixth Cause of Action alleges that Defendant violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, et seq. The MMWA "authorizes a civil suit by a consumer to enforce the terms of an implied or express warranty" and, for the most part, "calls for the application of state written and implied warranty law, not the creation of additional federal law." Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 833 (2006) (quoting Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C. Cir. 1986)). Because Plaintiff has stated an implied warranty claim, Plaintiff has also stated a claim under the MMWA.

**B. Motion to Strike**

Defendant moves to strike portions of the FAC that Defendant claims are irrelevant or prejudicial. Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any material that is "redundant, immaterial, impertinent or scandalous." Motions to strike are generally disfavored. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

Defendant seeks to strike portions of the Complaint that relate to the Warning Letter the FDA sent to Defendant, communications between the FDA and Defendant as well as other manufacturers of caffeinated alcoholic beverages, articles regarding caffeinated

alcoholic beverages and/or FDA action with respect to such products, and remarks by U.S. Senator Charles E. Schumer expressing concern regarding the marketing of caffeinated alcoholic beverages.

The Court denies Defendant's motion to strike these allegations. These allegations generally relate to safety concerns regarding caffeine in alcoholic beverages and may relate to Defendant's knowledge of such concerns. Defendant will not suffer any prejudice from the denial of its motion to strike. The Court's ruling does not prevent Defendant from challenging the admissibility of any evidence in connection with motions or trial.

### III. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is **GRANTED** as to the breach of express warranty claim only. The motion to dismiss is otherwise **DENIED**. Defendant's motion to strike is also **DENIED**. Defendant shall file an answer to the FAC within 15 days of the entry of this order.

**IT IS SO ORDERED.**

DATED: March 8, 2012

BARRY TED MOSKOWITZ, Chief Judge
United States District Court